IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FRANCIS BARKER, JR.,

                  §
                  §
      Plaintiff,   §
                  §
VS.                §   CIVIL ACTION H-10-0898
                  §
HERCULES OFFSHORE, INC., HALL-  §
HOUSTON EXPLORATION II, L.P.,  §
HALL-HOUSTON EXPLORATION     §
PARTNERS, L.L.C., AND HALL-    §
HOUSTON EXPLORATION COMPANY,   §
                  §
      Defendant.   §

## OPINION AND ORDER DENYING REMAND

Pending before the Court in the above referenced action, arising out of a tort that occurred on a jack up drilling rig in the Gulf of Mexico off of Galveston, Texas and removed by Defendant Hercules Offshore, Inc. ("Hercules") from the County Court at Law No. 3 of Galveston County, Texas on federal question jurisdiction based on the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331, *et seq.*, is Plaintiff Francis Barker, Jr.'s motion to remand (instrument #7).[1]

### Factual Allegations

Plaintiff's Original Petition (#1, Notice of Removal, Ex. E) alleges that Plaintiff, a welder employed by Frank's Casing, Inc., which was under contract to the Defendants, was working on board

---

[1] Plaintiff supplemented the motion to remand with a Certificate of Conference (#8).

Hercules's mobile offshore jack-up drilling unit (MODU), drilling rig #251, which at that time was attached to the seabed in Galveston Block 151, on the Outer Continental Shelf, for the purpose of developing minerals there (i.e., "setting up to drill a well" on the site for further production of oil).  Plaintiff sustained his alleged injury when he and his co-welder and long-time best friend Thomas B. Broussard were attempting to remove the Pollution/Oil Pan in order to run a 60" pipe casing underneath the drilling floor.  Plaintiff complains that although safety manuals and practices of Defendants required that there be a safety meeting, pre-job plan, instructions by Hercules' employees on how to perform the job and remove the pan, communication among the parties, and fall protection devices, and although Plaintiff requested that Hercules's driller provide fall protection equipment, including an air hoist to suspend the pan after the support structures were cut off, none of these had been provided to Plaintiff and Broussard.  They were told to and did cut the straps supporting the pan, which was directly above the ocean floor.  With Plaintiff watching, the pan on which Broussard was standing fell into the ocean floor about 100 feet below.  Broussard managed to hang onto a beam for some time, but then lost his grip.  Plaintiff was able to hold onto a beam, but he witnessed Broussard fall into the water, striking a beam on the way.  Broussard's body was lifted from the water and flown out by helicopter.

Plaintiff asserts that he suffered severe permanent psychological trauma and physical pain and suffering, followed later by a cerebral stroke, which he claims was caused by the injuries he suffered from the accident.

The Original Petition brings three causes of action. First, it alleges, under general maritime law, claims of negligence, gross negligence, and wanton disregard for the safety of Plaintiff and Broussard. He seeks general, special and punitive damages under general maritime tort law. Second, in the alternative, under 33 U.S.C. § 905(b),[2] it alleges that Hercules was negligent as

---

[2] Title 33 U.S.C. § 905(b) of the Longshore Harbor Workers' Compensation Act ("LHWCA"), which can apply through OCSLA, 43 U.S.C. §1333(b) and (c)), provide in relevant part,

(b) Negligence of vessel
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . .  The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.  The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

(c) Outer Continental Shelf
In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under this Act by virtue of section 1333 of Title 43, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such

owner/operator of the vessel, Hercules Rig 251, that Hercules's negligence proximately caused Plaintiff's injuries,  and that it breached its duty to Plaintiff, including its "turn over duty," duty to warn of dangers not obvious to the contractor, active control duty, and duty to intervene.  Third, under Texas tort law to the extent it supplements or supplants maritime law, it alleges negligence, gross negligence and wanton disregard for the safety of Plaintiff and Broussard, and Plaintiff again seeks general, special and punitive damages.

**Relevant Law**

*Removal*

> The federal removal statute, 28 U.S.C. § 1441, provides,

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

> (c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise

---

vessel in accordance with the provisions of subsection (b) of this section. . . .

nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Under 28 U.S.C. § 1441(a) any state court action over which federal courts would have original jurisdiction may be removed from state to federal court. *Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 282 (5th Cir. 2007); *see also, e.g., Guttierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)("A district court has removal jurisdiction in any case where it has original jurisdiction.").

A district court has original federal question jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Federal question claims are removable "without regard to the citizenship or residence of the parties." *Id.* Because federal courts have original federal question jurisdiction over OCSLA claims, OCSLA claims by themselves are removable under § 1441 without regard to citizenship. *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340 (5th Cir. 1999).

The removing party bears the burden of showing that subject matter jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts are construed against removal because the removal statute is strictly construed in favor of remand. *Id.*

*OCSLA*

As oil and gas exploration moved outward into the sea from inland waters, disputes arose between the federal government and coastal states over ownership of the minerals in lands under coastal waters.  Kenneth G. Engerrand, *Primer of Remedies on the Outer Continental Shelf*, 4 Loy. Mar. L.J. 19, 20 (Spring 2005). Initially when California, and later, Louisiana and Texas began claiming ownership of the submerged lands off their shores, the Supreme Court held that the federal government rather than the states had paramount rights and control over the submerged lands and their minerals beyond the states' coastlines.  *United States v. California*, 332 U.S. 19, 38–39 (1947); *United States v. Louisiana*, 339 U.S. 699 (1950); *United States v. Texas*, 339 U.S. 707 (1950). Gradually Congress enacted legislation addressing the problem  *Id.* at 23; David W. Robertson, *The Outer Continental Shelf Lands Act's Provisions on Jurisdiction, Remedies and Choice of Law:  Correcting the Fifth Circuit's Mistakes*, 38 J. Mar. L. & Com. 487, 494–95 (Oct. 2007).  In 1933 Congress passed the Submerged Lands Act, 43 U.S.C. §§ 1301–1315, under which the federal government ceded to the states all interests it had in the seabed and natural resources underlying the coastal waters up to three geographical miles from the coastline, but reserving to the federal government the seabed and natural resources of the Outer Continental Shelf (the area extending seaward beyond that allocated to the states in the Submerged Lands Act).  *Id.; id.*  Congress did allow a more extended

boundary, up to three marine leagues, to states bordering the Gulf of Mexico, including Texas, where the state's constitution or laws before the state became a member of the Union so provided or where Congress had previously approved a boundary of more than three geographic miles.  *Id.; id.* at 495.

In 1953 Congress passed OCSLA, 43 U.S.C. §§ 1331–1356, which allocated to the federal government "jurisdiction, control, and power of disposition" over the subsoil and seabed of the outer Continental Shelf ("OCS").[3]   Engerrand, 4 Loy. Mar. L.J. at 24; Robertson, 38 J. Mar. L. & Com. at 496.  In *Hufnagel v. Omega Service Industries, Inc.*, the Fifth Circuit observed that "Congress

_____

[3] Title 43 U.S.C. § 1331(a) defines the OCS as "all submerged lands lying seaward and outside the area of lands beneath navigable waters as defined in section 1301 of this title, and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control."  Title 43 U.S.C. § 1301 provides that "lands beneath navigable waters" means

(1) all lands within the boundaries of each of the respective States which are covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, or acquired sovereignty over such lands and waters thereafter, up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction; (2) all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide and seaward to a line three geographical miles distant from the coast line of each such State and to the boundary line of each such State where in any case such boundary existed at the time such State became a member of the Union, or as heretofore approved by Congress, extends seaward (or into the Gulf of Mexico) beyond three geographical miles, and (3) all filled in, made, or reclaimed lands which formerly were lands beneath navigable waters, as hereinabove defined."

enacted OCSLA to provide a federal body of law to govern operations
on the outer Continental Shelf." 182 F.3d 340, 349 (5th Cir. 1999),
*citing Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352
(1969)("The purpose of the Lands Act was to define a body of law
applicable to the seabed, the subsoil, and the fixed structures .
. . on the outer Continental Shelf.").

Title 43 U.S.C. § 1333(a)(1), which asserts exclusive federal
jurisdiction over the subsoil and seabed of the OCS, provides in
relevant part,

> The Constitution and laws and civil and political
> jurisdiction of the United States are extended to the
> subsoil and seabed of the outer Continental Shelf and to
> all artificial islands, and all installations and other
> devices permanently or temporarily attached to the
> seabed, which may be erected thereon for the purpose of
> exploring for, developing, or producing resources
> therefrom, or any such installation or other device
> (other than a ship or vessel) for the purpose of
> transporting such resources, to the same extent as if the
> outer Continental Shelf were an area of exclusive Federal
> jurisdiction located within a State . . . .

Furthermore, under 43 U.S.C. § 1349(b), OCSLA expressly grants
subject matter jurisdiction to federal district courts over "cases
and controversies arising out of, or in connection with any
operation conducted on the outer Continental Shelf which involves
the exploration, development,[4] or production of the minerals, of

---

[4] OCSLA defines "development" as "those activities which take
place following discovery of minerals in paying quantities,
including geophysical activity, drilling, platform construction,
and operation of all onshore support facilities, and which are for
the purpose of ultimately producing the minerals discovered." 43
U.S.C. § 1331(l). "'[P]roduction' means those activities which

the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .   Proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose."   43 U.S.C. § 1349(b)(1)(original jurisdiction).[5] Federal question jurisdiction under OCSLA, by its express statutory provision, is independent of any additional maritime basis for federal jurisdiction.   *Texaco Exploration and Production, Inc. v. AmClyde Engineered Products Co., Inc.*, 448 F.3d 760, 768 (citing U.S. Const. Art. III, § 3; 28 U.S.C. § 1331), *amended on other grounds on rehearing*, 453 F.3d 652 (5th Cir.), *cert. denied*, 549 U.S. 1053 (2006).   The Fifth Circuit has concluded that the jurisdictional grant is broad and the Act "covers 'a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States.'"   *Id., citing*

_____

take place after the successful completion of any means for the removal of minerals, including such removal, field operations, transfer of minerals to shore, operation monitoring, maintenance and work-over drilling."   § 1331(m).

   [5] The Fifth Circuit has concluded that "the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333." *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985); *EP Operating Limited Partnership v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994).   Therefore it found that Congress intended that the "judicial power of the United States be extended to the entire range of legal disputes that it knew would arise relating to resource development on the Outer Continental Shelf." *Id., citing id.*

*Tennessee Gas Pipeline v. Houston Cas. Co.*, 87 F.3d 150, 154 (5th Cir. 1996), and *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 495 (5th Cir. 2002), *overruled on other grounds*, 589 F.3d 778 (5th Cir. 2009)(*en banc*), *cert. denied*, 130 S. Ct. 3386 (2010).

The plaintiff need not expressly invoke OCSLA in his complaint to have it apply; "OCSLA governs if the facts alleged within the complaint fall within the statutory grant of jurisdiction." *Moore v. Bis Salamis, Inc., BP*, ____ F. Supp. 2d _____, No. 1:09-CV-1008, 2010 WL 3745023. *8 (E.D. Tex. Sept. 20, 2010), *citing Nase v. Teco Energy,* Inc., 347 F. Supp. 2d 313, 317 (E.D. La. 2004)(Even when not referenced in the complaint, OCSLA applies when the events at issue occurred on the OCS and arise out of or relate to mineral production, 43 U.S.C. § 1331(a), and the "but-for" test, discussed *infra*, is met), *citing* Tennessee *Gas Pipeline*, 87 F.3d at 154-55.

The Fifth Circuit has held that the well-pleaded complaint rule[6] does not apply to pleadings in state court that fail to

---

[6] Usually the well-pleaded complaint rule applies to determine whether a suit is removable: "a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint." *Guttierrez*, 543 F.3d at 251-52. "A federal question exists 'only in those cases in which a well-pleaded complaint established either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Singh v. Duane Morris, LLP*, 538 F.3d 335, 337-38 (5th Cir. 2008), *citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)(construing § 1331), and *Christianson v. Cold Indus. Operating Corp.*, 486 U.S. 800, 809 (19898)(construing § 1338(a)).

invoke OCSLA because by its own express terms the statute creates jurisdiction in the federal district courts: "In determining federal court jurisdiction, we need not traverse the Serbian Bog of the well-pleaded complaint rule because [Section 1349] of OCSLA expressly vests jurisdiction in the United States District Courts." *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988). *See also Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 328 (5th Cir. 1987)(regardless of how the parties characterize jurisdiction, OCSLA determines the jurisdiction and the applicable law); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, ___ F. Supp. 2d ___, MDL 2179, 2010 WL 3943451, *2 (E.D. La. Oct. 6, 2010)("The well-pleaded complaint rule applies only to removal based on 28 U.S.C. § 1331 (statutory "arising under" cases); when jurisdiction exists under 43 U.S.C. § 1349, the rule does not bar removal).

To determine whether a cause of action arises under OCSLA, the Fifth Circuit applies a broad "but-for" test. In *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988), a personal injury suit by a platform worker injured when a rope on which he was swinging on the platform broke and he fell onto the deck of an adjacent transport vessel, the Fifth Circuit applied the two-prong test to establish an OCSLA claim: (1) the plaintiff's employment furthered mineral development on the Outer Continental Shelf, and (2) the plaintiff's injury would not have occurred "but for" his

employment.   In *Recar*, the panel held that (1) the platform worker's employment was in furtherance of mineral development on the outer Continental Shelf, and (2) "but for that employment, he would not have been injured"; therefore the federal district court had original jurisdiction over his claims under OCSLA.  *Id.  See also Hufnagel*, 182 F.3d at 350; *Simms v. Roclan Energy Services, Inc.*, 137 F. Supp. 2d 731 (W.D. La. 2001)(court had subject matter jurisdiction under OCSLA in suit to recover for personal injuries of a worker hurt while being lowered in a basket by crane from an offshore platform to a vessel where the worker provided electrical services on the platform, which was located on the Outer Continental Shelf, the platform's owner was developing minerals, and the worker would not have been in the basket but for his employment).

In *Rodrigue*, 395 U.S. at 355-56, the United States Supreme Court determined that OCSLA, as it existed at that time, extended federal jurisdiction and law to "fixed structures" on the OCS. From the statute's legislative history and Congress' view that offshore oil and gas activities were more closely related to the adjacent state than to traditional maritime activity, the high Court opined that fixed drilling platforms should be treated as islands, not as vessels, and that borrowed state law, not maritime law, constituted the federal law that governed two actions before it that addressed accidents on fixed drilling rigs on the OCS

resulting in death.  *Id.*[7]  "Congress decided that these artificial islands, though surrounded by the high seas, were not themselves to be considered within maritime jurisdiction."  *Id.* at 365-66.

In *Demette*, in which a casing worker was injured while performing his job on a jack-up rig attached to the OCS, the Fifth Circuit interpreted the statutory language and concluded that OCSLA applied to the following situses:

> (1) the subsoil and seabed of the outer Continental Shelf;
> (2) any artificial island, installation, or other device if
>> (a) it is permanently or temporarily attached to the seabed of the Outer Continental Shelf, and
>> (b) it has been erected on the seabed of the outer Continental Shelf, and
>> (c) its presence on the outer Continental Shelf is to explore for, develop, or produce resources from the outer Continental Shelf;

---

[7] In *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. at 355-56, the Supreme Court pointed out that OCSLA clarified that

> federal law, supplemented by the state law of the adjacent State, is to be applied to these artificial islands as though they were federal enclaves in an upland State . . . in lieu of treating the structures as vessels, to which admiralty law supplemented by the law of the jurisdiction of the vessel's owner would apply. . . . This was done in part because men working on these islands were closely tied to the adjacent State, to which they often commute and on which their families live, unlike transitory seamen to whom a more generalized admiralty law is appropriate. . . . The purpose of the Lands Act was to define a body of law applicable to the seabed, subsoil, and the fixed structures . . . here on the outer Continental Shelf.  That this law was to be the federal law and then only as when not inconsistent with applicable federal law, is made clear by the language of the Act.

> (3) any artificial island, installation, or other device if
>> (a) it is permanently or temporarily attached to the seabed of the outer Continental Shelf, and
>> (b) it is not a ship or vessel, and
>> (c) its presence on the outer Continental Shelf is to transport resources from the outer Continental Shelf.

*Demette*, 280 F.3d at 497.  In *Demette*, the rig at issue was similar to the Hercules 251:  it was a jack-up MODU, temporarily attached to the OCS at the time of the plaintiff's injury.  The Fifth Circuit held that this jack-up rig, while a vessel, was covered by OCSLA because it met the situs requirement of § 1333(a)(1), i.e., that it belonged in the second category of OCSLA situses:  it was an artificial island, installation or other device that had been temporarily attached to the seabed, and that it was erected on the OCS for the purpose of extracting resources, i.e., drilling for oil.  *Id.* at 497.

*OCSLA and Surrogate Federal Law*

There has been substantial confusion among the courts regarding the relationship between jurisdiction and the choice of applicable law under OCSLA.  *See generally* Engerrand, 4 Loy. Mar. L.J. at 25.  OCSLA extends federal law to the Outer Continental Shelf and borrows adjacent state law to fill any gaps.  *AmClyde*, 448 F.3d at 772.  The Act's choice-of-law provision, 43 U.S.C. § 1333(a)(2)(A)(OCSLA's "gap-filling provision"), provides,

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal

> laws and regulations . . . the civil and criminal laws of
> each adjacent State . . . are hereby declared to be the
> law of the United States for that portion of the subsoil
> and seabed of the outer Continental Shelf, and artificial
> islands and fixed structures erected thereon.[8]

*See also Hufnagel*, 182 F.3d at 349 (OCSLA is exclusively federal law.  However, recognizing that the statutory federal law may in some areas be inadequate, OCSLA incorporates aspects of the laws of adjacent states, where those laws are not inconsistent with OCSLA.  These incorporated state laws become 'surrogate federal law," and are considered exclusively federal law when applicable under OCSLA.").  As noted, for adjacent state law to apply as surrogate federal law under OCSLA, the controversy must arise on a situs covered by OCSLA (on subsoil, seabed or artificial structure permanently or temporarily attached thereto), federal maritime law must not apply of its own force, and state law must not be inconsistent with federal law.  *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

*General Maritime Law and Admiralty Jurisdiction*

If OCSLA applies, the Court has original federal question subject-matter jurisdiction under OCSLA, § 1349(b), but not necessarily removal jurisdiction.

Plaintiff's Original Petition does not reference OCSLA in this

---

[8] Even if the parties provide for a choice of law in a contract, it "is of no moment because the parties' choice of law will not trump the choice of laws scheme provided by Congress in OCSLA." *AmClyde*, 448 F.3d at 772 and n.8.

suit, but expressly asserts claims under general maritime law.  It is well established that general maritime claims do not "arise under the Constitution, treaties, or laws of the United States" for purposes of federal question jurisdiction, and an admiralty suit filed in state court is not removable merely because it could have been filed in federal court; rather a maritime claim does not provide federal question jurisdiction and removal of such a claim is only permissible if jurisdiction based on other grounds, e.g., diversity or on a statutory provision.  *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150, 153 & nn.5&6, 155 (5th Cir. 1996); *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 348 n.4 (5th Cir. 1999).   In the instant action there is no diversity jurisdiction.

If it is determined that a case arises (1) under OCSLA, and therefore there exists a federal question under the first prong of § 1441(b), (2) as well as under general maritime law, the first issue presented is whether 28 U.S.C. § 1441(c) presents a bar to removal of any of plaintiff's claims.  *Simms*, 137 F. Supp. 2d at 735.  As noted earlier, § 1441(c) provides,

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

A "separate and independent" claim or cause of action under §

-16-

1441(c) is "defined in the jurisprudence more by what it is not than by what it is." *Simms*, 137 F. Supp. 2d at 735.  "'[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocking series of transactions, there is no separate and independent claim or cause of action under 1441(c).'" *Id., quoting American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 14 (1951).  Here Plaintiff has alleged that he suffered only one injury and any claims he has all arise from the same set of facts. "The fact that two or more actors may have been the cause of his injury does not create two or more separate and independent claims." *Id.* at 736.  Although a plaintiff may assert different theories of recovery for that single wrong, it is still "'a single wrongful invasion of a single primary right of the plaintiff.'" *Id., citing Finn*, 341 U.S. at 13.  So if there are any general maritime law claims that are "otherwise non-removable" joined with claims that are removable under OCSLA, if OCSLA claims are separate and independent from any other "nonremovable" claims, the whole case may be removed and, in the court's discretion, it may remand all matters in which state law predominates.[9]  Such is not the case

---

[9] As noted, maritime law claims are removable if federal jurisdiction is based on something other than admiralty, e.g., diversity or a federal statutory provision. *Simms*, 137 F. Supp. 2d at 736, *citing Tennessee Gas*, 87 F.3d at 153 & nn.5&6.

The issue of a court's jurisdictional base must be distinguished from the issue of which law it applies.  State-law cases can be removed when federal courts have subject-matter jurisdiction based on diversity or federal supplemental jurisdiction (i.e., when state laws are appended to federal

here, as the claims arise from the same set of facts and Plaintiff has suffered only one injury, so the criteria for removal and discretionary remand under § 1441(c) are not met.

If OCSLA applies by its own terms to this action and the OCSLA and general maritime law claims are not separate and independent, they may be claims over which OCSLA and general maritime law "overlap."  In *Hufnagel*, the plaintiff claimed that he was a Jones Act seaman and was severely injured when he was struck in the face by a chain or hook while he was repairing piles on a oil and gas platform permanently affixed to the OCS off the coast of Louisiana; he asserted claims under (1) the Jones Act, (2) general maritime law, (3) the Louisiana Civil Code, made surrogate federal law by application of OCSLA for negligence and strict liability, (4) violations of the Coast Guard and Secretary of the Interior Regulations,[10] and (4) LHWCA, 33 U.S.C. § 901 *et seq.* and/or 33 U.S.C. § 905(b).  Defendants removed the case, arguing that the Jones Act claim was fraudulently pled, and the plaintiff moved for remand on the grounds that Jones Act cases are not removable.  The

---

claims), but in both instances the Court applies state law, not substantive federal law, to the state law claims.  *Simms*, 137 F. Supp. 2d at 736.

[10]  The Fifth Circuit concluded that these regulations presumably were issued under the authority of OCSLA, 43 U.S.C. § 1333()(1)("The Secretary of the Department in which the Coast Guard is operating shall have authority to promulgate . . . regulations . . . relating to the promotion of safety of life and property on the artificial islands, installations and other devices referred to in subsection (a) . . . .").  *Hufnagel*, 182 F.3d at 349-50.

district court determined from undisputed evidence that Hufnagel did not qualify as a Jones Act seaman and could not recover under the Act, that his claim against the platform owner arose under OCSLA, and that it was thus removable under 28 U.S.C. § 1441(a) and (b).  It denied the remand motion despite the absence of diversity and despite the fact that two of the three defendants were Louisiana citizens, and it certified its decision to the Fifth Circuit under 28 U.S.C. § 1292(b) to determine whether the Jones Act prohibited removal and, if not, whether Hufnagel's claims supported removal jurisdiction.  *Hufnagel*, 182 F.3d at 344-45.

The Fifth Circuit affirmed the remand denial, noting that the fixed platform attached to the OCS was not a vessel, but legally a man-made island.  *Id.* at 345 n.1, *citing Rodrigue*, 395 U.S.  352, *Lormand v. The Superior Oil Co.*, 845 F.2d 536, 540 (5th Cir. 1987)(holding that injuries occurring on fixed platforms are not within admiralty jurisdiction), *cert. denied*, 484 U.S. 1031 (1988), and *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067, 1076 (5th Cir. 1986)(same).  Regarding removal jurisdiction, the Fifth Circuit held that the removal was proper because of § 1349(b)(1) of OCSLA, which, although not mentioned in the pleadings, applied because the events occurred on a fixed platform on the OCS, plaintiff's employment furthered mineral development on the OCS, and the facts satisfied the "but-for" test for whether a cause of action arises under OCSLA.  *Id.* at 349.  It opined that OCSLA was exclusively

federal law, that it incorporated as surrogate federal law Louisiana law that was not inconsistent with federal law under 43 U.S.C. § 1333(a)(2)(A). *Id.*

Moreover, the Fifth Circuit observed, "OCSLA does not necessarily transform maritime claims falling within its jurisdictional grant into claims arising under federal law." *Hufnagel*, 182 F.3d at 350. Where both OCSLA and general maritime law apply to the claims in an action, OCSLA does not displace general maritime law. *Id., citing Smith v. Penrod Drilling*, 960 F.2d 456, 459 (5th Cir. 1992)("When an event occurs on an OCSLA situs but also is governed by maritime law, maritime law controls."); *Tennessee Gas Pipeline*, 87 F.3d at 154 (OCSLA "was not intended to displace general maritime law. . . . According to the statute, 'this subchapter shall be construed in such a manner that the character of the waters above the outer Continental Shelf as high seas and the right to navigation and fishing therein shall not be affected.'" [43 U.S.C. § 1332(2).] Furthermore, 43 U.S.C. § 1333(f) makes clear that the applicability of OCSLA law under 43 U.S.C. § 1333(a) shall not give rise to any inference that other provisions of law (such as general maritime law) do not also apply. It is not surprising, therefore, that this court has declared that where OCSLA and general maritime law both could apply, the case is to be governed by maritime law."). As noted, maritime actions do not "arise under federal law" for purposes of removal. *Id.* In

*Tennessee Gas*, the Fifth Circuit characterized as a "conundrum" the fact that § 1441(b) imposed citizenship restrictions on the removal of claims even though citizenship is not relevant to the district court's original jurisdiction under OCSLA.  *Id.* at 351, *citing Tennessee Gas*, 87 F.3d at 156.  However, the panel did not need to resolve that conundrum because it found that as a matter of law the claim the plaintiff asserted against Kerr-McGee was governed not by maritime law, but by Louisiana Civil Code § 2322, which was made applicable as surrogate federal law by OCSLA, 43 U.S.C. § 1333(a)(2)(A).  The appellate court noted that to give rise to a tort in admiralty, an incident must have both a maritime situs and a connection to traditional maritime activity, neither of which Hufnagel's claims satisfied.  *Id., citing inter alia Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dick Co.*, 513 U.S. 527 (1995).[11]  It found that Hufnagel's injury occurred on an off-shore,

---

[11] In *Jerome B. Grubart*, the Supreme Court wrote,

[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1331(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity.  A court applying the location test must determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water.  46 U.S.C. App. § 740.  The connection test raises two issues.  A court, first, must "assess the general features of the type of incident involved," [*Sisson v. Ruby,* 497 U.S. 358, 363 (1990)], to determine whether the incident has "a potentially disruptive impact on maritime commerce," *id.*, at 364 n.2, . . . .  Second, a court must determine whether the "general character" of the "activity giving rise to the incident" shows a "substantial relationship

fixed platform, not on navigable waters and was not caused by a
vessel; moreover it opined that "[f]ixed drilling platforms do not
exist for any purpose related to traditional maritime navigation or
commerce," thus failing to support application of maritime law.
*Id.* at 351-52, *citing Rodrigue*, 395 U.S. at 359-61.  "Construction
work on fixed offshore platforms bears no significant relation to
traditional maritime activity." *Id.* at 352*, citing Herb's Welding,
Inc. V. Gray*, 470 U.S. 414, 424-25 (1985)(finding offshore platform
worker not engaged in maritime employment); *Laredo Offshore
Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1231 (5th Cir.
1985).

In *Simms*, the district court explained clearly by tracing back
the language in *Hufnagel* to *Laredo Offshore* what constitutes an
"overlap" between OCSLA and general maritime law that would
preclude removal of cases where it was found.  137 F. Supp. 2d at
737.  Quoting § 1333(a)(2)(A), the *Laredo Offshore* panel observed,
"'For federal law to oust adopted state law, federal law must first
apply independently of the location of the platform or other device
at sea.'" *Simms*, 137 F. Supp. 2d at737, *quoting Laredo Offshore*,
754 F.2d at 1230.  For the purposes of oil and gas exploration on
the OCS, admiralty jurisdiction only applies "'if the case has a
sufficient maritime nexus wholly apart from the situs of the
relevant structure in navigable waters,'" e.g., when a plaintiff is

_____

        to traditional maritime activity."  *Id.*, at 365.

-22-

a seaman under the Jones Act (thus with an independent and
sufficient basis for maritime jurisdiction) who alleges injury
while on an OCSLA situs. *Id., citing id.* The *Simms* court
concluded, "It would be inconsistent with the Jones Act, i.e., the
applicable federal law," to apply adjacent state law pursuant to
OCSLA to the seaman's claims," and "[t]herefore maritime law would
oust the state law adopted by OCSLA." 137 F. Supp. 2d at 737,
*citing Kimble v. Noble Drilling Corp.*, 416 F.2d 847 (5th Cir. 1969),
*cert. denied*, 397 U.S. 918 (1970). In *Simms*, the district court
concluded that in the case before it the admiralty jurisdiction and
OCSLA did not overlap as contemplated by *Laredo Offshore*; "[r]ather
they could be said to coexist as to the separate claims." 137 F.
Supp. 2d at 738. The claims against the platform owner, the crane
operator, and the employer of the crane operator fall under OCSLA;
there was no maritime claim against them because the incident
lacked a connection with the traditional maritime activity and
situs required for application of substantive maritime law. *Id.,*
*citing Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982). While
the plaintiff might have a claim under general maritime law against
the vessel owner/operator, that claim "can coexist with the claims
against the platform owner" as there is no overlap of OCSLA and
general maritime law. *Id.* The panel concluded that in *Laredo*
*Offshore*, maritime law did not apply to the accident on a platform
located on the OCS and that there was no connection to traditional

maritime activity, and therefore maritime law did not prevent removal.  *Hufnagel*, 182 F.3d at 351.

Thus it is possible for OCSLA to govern the claims of an action, vesting the court with original federal question subject matter jurisdiction, even as OCSLA directs that application of an adjacent state's substantive law because that gap-filling state law applies as surrogate federal law.  *See Stokes v. Petroleum Helicopters*, No. Civ. A. 97-0508, 1997 WL 695557, *4-5 (E.D. La. Nov. 5, 1997); *Simms v. Roclan Energy Services*, 137 F. Supp. 2d 731, 738 (W.D. La. 2001).  Where state law is applied as surrogate federal law and where there is no "overlap" between OCSLA and general maritime law on the claims asserted but where they can coexist separately because general maritime law does not apply to the OCSLA claims, removal is permissible.

### Plaintiff's Motion to Remand (#7)

In essence Plaintiff's motion to remand argues that it is undisputed that the tort at issue occurred on a vessel (a jack up drilling rig in the Gulf of Mexico off of Galveston, Texas), located on navigable water on the Outer Continental Shelf ("OCS"), and therefore maritime law, not OCSLA, applies to this action against third parties.  Plaintiff maintains that a jack up drilling rig is a "vessel" for the purpose of the application of maritime law.  *Houston Oil & Minerals Corp. v. American International Tool Co.*, 827 F. 2d 1049 (5th Cir. 1987), *cert. denied*, 484 U.S. 1067

(1988); *Vickers v. Chiles Drilling Co.*, 822, F.2d 535, 537 (5th Cir. 1987).  The Fifth Circuit has proclaimed,

> The law is clear that when a tort occurs on navigable water on the OCS, as opposed to, for example, a stationary platform, and a non-seaman is injured, maritime law applies to the ensuing tort action by that worker against third parties.

*Grand Isle Shipyard, Inc. v. Secor Marine, LLC*, 589 F.3d 778, 781 (5th Cir. 2009)(*en banc*), *cert. denied*, 130 S. Ct. 3386 (2010).

Plaintiff emphasizes that unlike OCSLA, maritime law does not "arise under the Constitution, treaties or laws of the United States" for purposes of original federal question jurisdiction under Section 1331.  *Romero*, 358 U.S. 354.

In *Grand Isle Shipyard*, the Fifth Circuit applied a three-prong test, established in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352 (1969),[12] for determining whether the law of the adjacent state applies as surrogate federal law to the extent that it is not consistent with federal law:  "(1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force.  (3) The state law must not be inconsistent with Federal Law." *Grand Isle Shipyard*, 589 F.3d at 782-83, *citing Union Texas Petroleum Corp. v.*

---

[12] *Rodrigue* clarified that "for federal law to oust adopted state law, federal law must first apply."

*PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).[13]
Applying that test, Plaintiff argues that the second prong is not
met here because maritime law does apply of its own force. *Grand
Isle*, 589 F.3d at 783.

Title 28 U.S.C. § 1441 establishes two requirements for
federal question jurisdiction removal: (1) only civil actions "of
which the district courts . . . have original jurisdiction may be
removed" and (2) civil actions founded on a claim or right "arising
under the Constitution, treaties or laws of the United States shall
be removable without regard to citizenship. Any other actions
shall be removable only if none of the parties in interest properly
joined and served as defendants is a citizen of the State in which
such action is brought." As noted, maritime law does not "arise
under the Constitution, treaties or laws of the United States" for
purposes of original federal question jurisdiction. *Romero*, 358
U.S. 354. Plaintiff argues that where maritime law applies, the
removing defendant must comply with the citizenship requirements in
the second sentence of 28 U.S.C. § 1441(b)("Any other such action
shall be removable only if none of the parties in interest properly
joined and served as defendants is a citizen of the State in which
such action is brought."). Defendant Hercules Offshore, Inc. is a

---

[13] Defendants argue that *Grand Isle Shipping* is not relevant
here because the focus there was that once an OCSLA situs was
established under 43 U.S.C. § 1333(a)(1), determining when adjacent
state law should be applied as surrogate federal law under OCSLA,
not with removal or federal subject matter jurisdiction.

resident of Texas, so Plaintiff argues that the second prong of § 1441(b) is not met and that removal was improper. *Walsh v. Seagull Energy Corp.*, 836 F. Supp. 411 (S.D. Tex. 1993); *Accu-Coat Services,* 948 F. Supp. 592; *Fogelman*, 747 F. Supp. 348.  In dicta, Plaintiff contends. the Fifth Circuit has suggested the same requirement. *Tennessee Gas Pipeline*, 87 F.3d  at 153; *Hufnagel*, 182 F.3d at 348; *Morris v. E.E. Marine Corp.*, 344 F.3d 439 (5th Cir. 2003).  Moreover, since there is no diversity jurisdiction under 28 U.S.C. § 1441(b), the removal was improper and the case should be remanded for lack of subject matter jurisdiction. *Romero*, 358 U.S. 534.

### Defendants' Response (#9)

Urging the Court to deny the motion to remand, Defendants Hercules, Hall-Houston Exploration II, LP, Hall-Houston Exploration Partners LLC, and Hall-Houston Exploration Company (collectively, "Hall-Houston") contend that this Court has original federal subject matter jurisdiction based on OCSLA, that the case was properly removed on the basis of a federal question under OCSLA so there is no requirement of diverse citizenship, and that the Court should deny the motion to remand.

Defendants point out that the jack-up rig in dispute here, the Hercules 251, the MODU on which the incident at issue took place, is also an OCSLA situs. *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d at 496-98. *Demette* explains that § 1333(a)(1) applies to two

categories: (1) "to the subsoil and seabed of the [OCS]" and (2) "to all artificial islands and all installations and other devices permanently or temporarily attached to the seabed." *Id.* at 496. The later category is further divided into two groups: "those artificial islands, installations, or devices 'erected' on the OCS 'for the purpose of exploring for, developing, or producing resources' from the OCS, and those 'other than a ship or vessel' whose purpose is transporting such resources." *Id.* The former is defined by its purpose, extraction of resources; the latter, by transportation of resources. *Id.* at 497. In *Demette* the Fifth Circuit developed a rule defining what locations are covered by OCSLA, of which the Court quotes only the portion relevant here:

> The OCSLA applies to all of the following locations:
>
> (1) the subsoil and seabed of the OCS;
> (2) any artificial island, installation, or other device if
> > (a) it is permanently or temporarily attached to the seabed of the OCS, and
> > (b) it has been erected on the seabed of the OCS, and
> > (c) its presence on the OCS is to explore for, develop, or produce resources from the OCS . . . .

*Id.* at 497. In *Demette*, the rig at issue was similar to the Hercules 251: it was a jack-up MODU, jacked up on the OCS at the time of the plaintiff's injury. The Court held that it met the situs requirement of § 1333(a)(1), that it belonged in "the second category of OCSLA situses": that it was a device "temporarily attached to the seabed," and that it was erected on the seabed of

-28-

the OCS for the purpose of drilling for oil." *Id.* at 497.  Thus the first prong of the *Grand Isle* test is met because the rig was a situs for purposes of OCSLA.

As for the second prong for determining if OCSLA applies, i.e., that federal maritime law not apply of its own force, Defendants argue that Plaintiff misconstrues this prong.  That test in *Grand Isle* addressed choice of law, i.e., whether the substantive law of a state adjacent to an offshore OCS platform may be applied to a contract dispute; it did not concern subject matter jurisdiction, and thus is irrelevant to the question here.  This dispute involves complementary federal bodies of law, i.e., OCSLA, general maritime law, and the LHWCA.  Federal law, specifically OCSLA, does apply of its own force (because the accident occurred on an OCSLA situs and any applicable state law not inconsistent with federal law applies as surrogate federal law) and grants the federal district court subject matter jurisdiction.[14]  Therefore the case was properly removed.  That substantive maritime law may be applied to some of Plaintiff's claims, but does not eject the Court out of subject matter jurisdiction under 28 U.S.C. § 1331.

Defendants also contend that the third prong is irrelevant because all Plaintiff's claims are asserted under federal law and

_____

[14] Because the accident did not occur on navigable waters or high seas in furtherance of a traditional maritime activity, admiralty jurisdiction was not invoked and general maritime law did not apply of its own force.

-29-

there are no state-law questions at issue here.

The parties agree that Plaintiff's employment on Hercules 251 was directly related to the development of minerals and other natural resources on the outer Continental Shelf and that but for that employment, he would not have been involved in the accident forming the basis of this suit. *Tennessee Gas*, 87 F.3d at 155, *citing Recar*, 853 F.2d at 369. Thus the Court has jurisdiction under OCSLA. The work Plaintiff was doing was in furtherance of the exploration for and development of minerals on the OCS in "preparing the rig's drill floor substructure." *Tennessee Gas*, 87 F.3d at 154-55. Furthermore, the case was properly removed because it presented a federal question. Removal was not based on maritime jurisdiction.

Defendants concede that district courts disagree whether diversity of citizenship is relevant to removal under OCSLA where maritime law applies, but emphasize that the Fifth Circuit has explicitly reserved ruling on this issue. Thus there are no Fifth Circuit cases prohibiting removal under the circumstances here.

### Plaintiff's Reply

In *Grand Isle Shipyard, Inc.,* which Plaintiff insists is dispositive on the issue of whether OCSLA applies here, the Fifth Circuit concluded that the situs requirement is not met where, as here, a tort occurs on navigable water: "In a tort action, if the tort occurs on navigable water instead of a fixed platform (or

other structure attached to the seabed), the OCSLA situs requirement is not met." 589 F.3d at 784. As noted, OCSLA was not intended to displace general maritime law. *Tennessee Gas Pipeline*, 87 F.3d at 154. Therefore OCSLA does not transform maritime claims falling within its jurisdictional grant into claims arising under federal law. *Hufnagel*, 182 F.3d at 350. Substantive maritime law continues to control where both OCSLA and general maritime law may apply. *Id.; Tennessee Gas Pipeline*, 87 F.3d at 154. As previously stated, maritime cases do not "arise under" federal law for purposes of federal removal jurisdiction. *Romero*, 358 U.S. at 154. Where Plaintiff's claims within OCSLA's grant of federal subject matter jurisdiction are governed by maritime law, there is no removal jurisdiction unless no defendant is a citizen of the state in which the suit is brought under 28 U.S.C. § 1441(b), regardless of whether the claims fall within the federal court's original jurisdiction under OCSLA. *Hufnagel*, 182 F.3d at 350.

### Defendants' Sur-Reply (#11)

Defendants insist that the Hercules 251, a MODU, does satisfy the OCSLA situs requirement for purposes of OCSLA because of its unique nature as a vessel that was fixed to, erected, and jacked up on the Outer Continental Shelf at the time of the accident at issue here. "[A] jack-up rig is erected within the meaning of OCSLA when the rig is jacked up and its legs are resting upon the OCS, even temporarily." *United States v. Pickett*, 598 F.3d 231, 236 (5th Cir.

2010), *citing Demette*, 280 F.3d at 498.

## Court's Decision

As should be apparent from this Court's summary of relevant law, Plaintiff's arguments for remand are in error.  The Court disagrees with Plaintiff that under the facts pleaded here, the jack up rig is a vessel that was on navigable waters when the accident occurred so that general maritime law applies.  Removal of this action was proper because (1) general maritime law, which if applicable might bar removal if it overlapped with OCSLA law, does not apply here and therefore there is no overlap with OCSLA and (2) the court has federal question subject matter jurisdiction over cases and controversies "arising out of or in connection with" any operation involving the "development" of minerals on the OCS under OCSLA, 43 U.S.C. § 1349(b)(1).

Although Plaintiff's pleadings do not cite OCSLA, that statute governs this suit because the facts as alleged fall with the statute's jurisdictional grant.  *Nase*, 347 F. Supp. 2d 317 (Even though not mentioned in the complaint, OCSLA applies when the events at issue occurred on the OCS and arise out of or relate to mineral production, 43 U.S.C. § 1331(a), and the *Recar* "but-for" test is met).  As a matter of law, the jack up rig involved here constitutes an OCSLA situs.  *See, e.g., Demette*, 280 F.3d at 496-97; *Hufnagle*, 182 F.3d at 345 n.1.  Here Plaintiff was injured and Broussard killed while working on a jack up rig temporarily

-32-

attached to the OCS to develop further production of oil, in connection with Defendants' operation on the OCS.  Plaintiff's injury and Broussard's death occurred on the OCS in furtherance of mineral development and would not have occurred but for their employment.  *Recar*, 853 F.2d at 369.  Because OCSLA applies, it incorporates the law of the adjacent state (here, Texas) as federal law where it is not inconsistent with federal law.  *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 549 (5th Cir. 2002); *Hufnagel*, 182 F.3d at 348.  The LHWCA also applies through OCSLA.  33 U.S.C. § 905(b) of LHWCA, applied through OCSLA, 43 U.S.C. §1333(b) and (c)).

For maritime law to govern a tort action, there must be both a "maritime situs and a connection to traditional maritime activity." *Hufnagel*, 182 F.3d at 351-52.  Both requirements must be met for maritime law to apply to preclude removal.  *Id.*  To satisfy the first prong, a plaintiff must show that the tort either occurred on navigable waters, or, if it occurred on land, that it was caused by a vessel on navigable waters.  *Jerome B. Grubart*, 513 U.S. at 533-34.  The second prong depends upon whether the incident caused a "potentially disruptive impact on maritime commerce and whether the general character of the activity is substantially related to traditional maritime activity.  *Id.*  Traditionally maritime law focuses on "the movement of vessels upon water"; in contrast "work on a stationary jack-up drilling rig involve[s]

traditional oil and gas activity." *Dozier*, 397 F. Supp. 2d at 851. The accident here did not occur on a maritime situs (i.e., on navigable waters, nor was did it occur on land but was caused by a vessel), but on a jack up rig attached to the seabed of the OCS, in other words, an OCSLA situs.  A jack up drilling rig affixed to the seabed of the OCS is considered to be an "device" for "the purpose of drilling oil," providing federal jurisdiction under OCSLA, and not a vessel subject to maritime jurisdiction.  *Dozier*, 397 F. Supp. 2d at 849, *citing Demette*, 280 F.3d at 498-99; *Simms*, 137 F. Supp. 2d at 735.  Nor does Plaintiff's claim arise from a traditional maritime activity related to navigation or commerce, but out of activities for developing oil and gas on the OCS.  Thus there is no admiralty jurisdiction, and removal of this action was not precluded by overlapping jurisdiction.

Accordingly the Court

ORDERS that Plaintiff's motion to remand is DENIED.

**SIGNED** at Houston, Texas, this 1ˢᵗ day of February , 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-34-