IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FRANCIS BARKER, JR.,            §
                               §
          Plaintiff,           §
                               §
VS.                            §    CIVIL ACTION H-10-0898
                               §
HERCULES OFFSHORE, INC., HALL- §
HOUSTON EXPLORATION II, L.P.,  §
HALL-HOUSTON EXPLORATION       §
PARTNERS, L.L.C., AND HALL-    §
HOUSTON EXPLORATION COMPANY,   §
                               §
          Defendant.           §

**OPINION AND ORDER OF SUMMARY JUDGMENT**

Pending before the Court in the above referenced action, seeking to recover for emotional distress caused by witnessing the death of a co-worker and best friend who fell from a jack up drilling rig in the Gulf of Mexico off of Galveston, Texas and grounded in the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331, *et seq.*, are two motions for summary judgment: one filed by Defendants Hall-Houston Exploration II, L.P., Hall-Houston Exploration Partners, L.L.C, and Hall-Houston Exploration Company (collectively, "Hall-Houston")(instrument #16), and the other by Defendant Hercules Offshore, Inc. ("Hercules")(instrument #17). Arguments in the two motions partially overlap, so the Court discusses them together.

Plaintiff Francis Barker, Jr. requests that the Court

reconsider its ruling (Opinion and Order, #15) that general maritime law does not apply here, but that the OCLSA and the law of the adjacent state, Texas, do apply. The Court denies the request and reaffirms its earlier decision.[1]

### Causes of Action

The Court concludes for reasons discussed in this Opinion and Order that the motions for summary judgment should be granted.

Plaintiff first alleges under 33 U.S.C. § 905(b)[2] that

---

[1] This Court therefore does not address Plaintiff's Supplemental Memorandum, instrument #21-2.

[2] Title 33 U.S.C. § 905(b) of the Longshore Harbor Workers' Compensation Act ("LHWCA"), which can apply through OCSLA, 43 U.S.C. §1333(b) and (c)), provides in relevant part,

(b) Negligence of vessel
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

(c) Outer Continental Shelf
In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under this Act by virtue of section 1333 of Title 43, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel in accordance with the provisions of subsection

-2-

Hercules was negligent as owner/operator of the vessel, Hercules
Drilling Rig 251, that Hercules's negligence proximately caused
Plaintiff's injuries, and that Hercules breached its duty to
Plaintiff, including its "turn over duty," duty to warn of dangers
not obvious to the contractor, active control duty, and duty to
intervene.  Because this Court has ruled that maritime law does not
apply here and because 33 U.S.C. § 905(b) only applies when
maritime law applies, this claim is moot.  *May v. Transcontinental
Drilling Co.*, 786 F.2d 1261, 1264 (5th Cir. 1986)("§ 905(b) permits
only the assertion of a claim for a maritime tort."), *cert. denied*,
479 U.S. 854 (1986); *McLaurin v. Noble Drilling (US), Inc.*, 529
F.3d 285, 289-90 (5th Cir. 2008).

     Plaintiff's other cause of action, under Texas tort law,
alleges negligence, gross negligence and wanton disregard for the
safety of Plaintiff and Broussard.  As will be discussed, under
Texas law Chapter 95 is the exclusive remedy against a property
owner like Hall-Houston, and Barker fails to satisfy the elements.
Otherwise, relating to both motions for summary judgment, there is
no cause of action under Texas law for negligent infliction of
emotional distress, and Plaintiff lacked the requisite familial
relationship to Broussard for theory of bystander recovery.

### Standard of Review

     Summary judgment under Federal Rule of Civil Procedure 56(c)

_____

     (b) of this section. . . .

is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact; the movant may, but is not required to, negate elements of the nonmovant's case to prevail on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an

essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause of action(s). *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).  Conclusory allegations unsupported by evidence will not preclude summary judgment.[3] *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

### Facts

The facts here are not in dispute.  On January 27, 2008, Plaintiff was a welder employed by independent contractor Frank's Casing, Inc., which was under contract to perform work for Hall-Houston onboard a mobile offshore jack-up drilling unit (MODU),

---

[3] Plaintiff incorrectly asserts that under Rule 56 "the well-pled allegations contained in the Complaint are assumed to be correct."  This is the standard for motions to dismiss under Rule 12(b)(6).

drilling rig #251, owned and operated by Hercules, which at the time of the accident in dispute was attached to the seabed in Galveston Bay Area Block 151, on the Outer Continental Shelf ("OCS"), for the purpose of developing minerals there (i.e., "setting up to drill a well" on the site for further production of oil).  Plaintiff and his co-welder and long-time best friend, Thomas B. Broussard, who had worked together for twenty years, were attempting to remove the Pollution/Oil Pan in order to run a 60" pipe casing underneath the drilling floor.  After a hole was cut in the drilling floor and an hole was being cut in the oil pan, Broussard, under instructions, cut the straps supporting the pan, which was directly above the ocean floor.  Plaintiff watched as the pan on which Broussard was standing fell into the ocean floor about 100 feet below.  Broussard managed to hang onto a beam for some time, but then lost his grip.  Plaintiff was able to hold onto a beam, but he witnessed Broussard fall into the water, striking a beam on the way.  Broussard's body was lifted from the water and flown out by helicopter.

Plaintiff, who was not physically injured during the fatal fall, asserts that he suffered severe permanent psychological trauma, which in turn caused a heart attack, which in turn caused a cerebral stroke, and he was left permanently and totally disabled.

### Defendants' Motions for Summary Judgment (#16 & 17)

With supporting documentary evidence, Hall-Houston Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 first on the grounds that Hall-Houston Exploration Partners, L.L.C., the general partner of Hall-Houston Exploration II, L.P., had no involvement in the work and/or events surrounding the incident made the basis of this suit nor did it contract for or participate in the work being performed on board the Hercules Offshore Rig 251 on January 28, 2009.  Affidavit of Brad Bynum (CFO of Hall-Houston Exploration II, L.P.), Ex. D to #16.

Furthermore, they insist, Hall-Houston Exploration Company is not a legal entity in existence.  *Id.*  It also had no involvement in the incident and did not contract for or have any participation in the work on board the Hercules Rig 251 on January 28, 2008. Because Plaintiff has sued the wrong parties, they contend Hall-Houston Exploration Partners, L.L.C. and Hall-Houston Exploration Company are entitled to summary judgment as a matter of law. *Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 109 (5th Cir. 1960)(affirming summary judgment because uncontroverted evidence showed plaintiff was not an employee of the insured).[4]

---

[4] *See also Assoc. Cas. Ins. Co. v. Allstate Ins. Co.*, 245 F.R.D. 245, 251 (S.D. Miss. 2007).

According th Bynum's affidavit, at the time of the incident in dispute, Hall-Houston Exploration II, L.P. had a Domestic Daywork Offshore Drilling Contract (Ex. B) with Hercules to furnish Drilling Rig 251 with equipment so that Hercules could drill offshore wells.  Ex. D.  Barker was employed by Frank's Casing, not Hall-Houston, which had no involvement in work performed by Frank's Casing or Barker.  Ex. D.

Alternatively, regarding the substantive claims, Hall-Houston argues that since under OCSLA the law of the adjacent state provides the applicable law, Plaintiff's claims are barred by Chapter 95 of the Texas Civil Practices and Remedies Code and because Plaintiff suffered no physical injury and therefore cannot establish the elements for a cause of action for mental anguish damages.[5]

_____

[5] Before the Texas legislature enacted Chapter 95, premises liability claims by an injured independent contractor performing work for a premises owner or contractor were brought under Texas common law. *Sinegal v. Ryan Marine Services*, 712 F. Supp. 2d 598, 601 (S.D. Tex. 2008), *citing Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 244 (5th Cir. 2005). The general rule under the common law was that a premises owner does not have a duty to ensure that an independent contractor performs work in a safe way. *Id., citing Redlinger v. Living, Inc.*, 689 S. W. 2d 415, 418 (Tex. 1985). "A property owner or contractor 'was liable [under Texas common law] for negligent activity only if it controlled the independent contractor's methods of work *and* failed to take reasonable care for such control.'" *Id, quoting id.*
    Chapter 95, passed in 1996 as part of Texas' tort reform effort, provided greater protection for property owners. *Sinegal*, 712 F. Supp. 2d at 601. Texas Civil Practice and Remedies Code Ann. § 95.003 (Vernon 2005) provides,

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) The property owner exercises or retains some control over the manner in which the work is performed, other than the right to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury

Hall-Houston states that Hall-Houston Exploration II, L.P. was assigned operator rights for the southwest one-quarter of Lease OCS-G 15740, is the Operator of Record for the area, and used the property to produce and market oil and gas.   Ex. D.   It is a "property owner" within the meaning of Chapter 95, § 95.002(1) because it had a mineral interest in the land and was entitled to reasonable use of the surface estate. *Francis v. Coastal Oil & Gas Corp.*, 130 S.W. 3d 76, 84 (Tex. App.--Houston [1ˢᵗ Dist. 2003); *Jupiter Oil Co. v. Snow*, 819 S.W. 2d 466, 488 (Tex. 1991).

Barker is an independent contractor because Hall-Houston hired Frank's Casing, Inc. as an independent contractor to perform work

---

death or property damage and failed to adequately warn.

Thus the three elements of Chapter 95 are control, actual knowledge and failure to warn. *Arsement*, 400 F.3d at 246. The Plaintiff must show both control and actual knowledge of the danger to impose liability on the property owner. *Id.* at 245.
Chapter 95 provides "the exclusive remedy for claims of negligence against property owners by independent contractors. *Franks v. Chevron Corp.*, Civ. A. No. 3:06-cv-506, 2007 WL 2330296, *5 (S.D. Tex. Aug. 13, 2007), *citing* Tex. Civ. Prac. & Rem. Code § 95, *et seq.*, and *Francis v. Coastal Oil and Gas Corp.*, 130 S.W. 3d 76, 88 (Tex. App.--Houston [1ˢᵗ Dist.] 2003, no pet.)(holding that when Chapter 95 applies, it is the plaintiff's exclusive remedy and precludes common law negligence liability).
The defendant bears the burden of showing that Chapter 95 applies to a plaintiff's claim. *Singal*, 712 F. Supp. 2d at 602. Once the defendant shows that § 95.003 applies, the plaintiff must establish both the control and actual knowledge prongs. *Gorman v. Ngo H. Meng*, 335 S.W. 3d 797, 802-03 (Tex. App.--Dallas 2011). Chapter 95 applies to both premises defect claims and negligent activity claims. *Singal*, 712 F. Supp. 2d at 602*, citing Arsement*, 400 F.3d at 249. The Fifth Circuit has held that Chapter 95 does not conflict with federal law so as to preclude the application of OCSLA. *Franks*, 2007 WL 2330296, at *4.

on Hercules' Drilling Rig Number 251, and Barker was an employee of Frank's Casing at the time of the incident at issue.

The claim satisfies § 95.002(2) because it arises "from the condition or use of an improvement to real property where the contractor constructs, repairs, renovates, or modifies the improvement." Chapter 95 applies to all claims based on a failure to provide a safe workplace due to a condition or use of an improvement to real property when a "contractor or subcontractor 'constructs, repairs, renovates, or modifies' that improvement" and where an employee of an independent contractor is injured as a result of some condition of real property related to the actual work they were hired to perform. *Francis*, 130 S.W. 3d at 84; *Fisher*, 16 S.W. 3d at 201. Texas courts have concluded that mineral wells constitute improvements to real property. *Francis*, 130 S.W. 3d at 84 ("Well-settled law holds that a mineral lease conveys a fee simple determinable interest in real property"); *Hunt v. HNG Oil Co.*, 791 S.W. 2d 191, 194 (Tex. App.--Corpus Christi 1990, writ denied)(referring to four producing gas wells and wells in process of completion as "improvements"), *not followed on other grounds*, *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428 n.51 (Tex. 2008).

During his deposition, Ex. A, p. 36, l.10-p. 37, l. 21, Barker testified that the Frank's Casing crew was cutting a pollution pan when the incident took place, so they were clearly

repairing, renovating or modifying an improvement to real property, satisfying the second condition under Chapter 95.

Hall Houston argues that Plaintiff's claim are nevertheless barred because Plaintiff cannot meet his burden to establish either of the two required prongs of Chapter 95.003, i.e., that the property owner exercised or retained some control over the manner in which the work was performed and that the property owner had actual knowledge of the danger and did not adequately warn the workers of the danger.  As a matter of law, a landowner exercises or retains control if he  either (1) has a contractual right of control or (2) exercises actual control.  *Dow Chem. Co. v. Bright*, 89 S.W. 3d 602, 606 (Tex. 2002).  The degree of control must be more than "the right to order the work to start or stop or to inspect progress or receive reports . . . ."  Tex. Civ. Prac. & Rem. Code, Ann. § 95.003(1).  While usually a premises owner has no duty to ensure that an independent contractor performs its work in a safe manner, the premises owner may be liable when the owner retains a right of supervisory control over the work on the premises. There is a narrow standard for determining whether a premises owner retains the right of supervisory control sufficient to trigger liability:  the right to control must (1) relate to the activity that caused the injury; (2) involve either the power to direct the work to be done in the order in which the work is to be done or forbid its being done in an unsafe manner; and (3) relate

-11-

to the injury that the alleged negligence caused. *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W. 2d 223, 225-26 (Tex. 1999)(superseded by passage of Chapter 95); *Dow Chemical v. Bright*, 89 S.W. 3d 602, 607 (Tex. 2002).

Hall-Houston insists it did not have a contractual right of control over Frank's Casing or Barker because there was no written contract that had been formally executed at the time of the incident. Ex. D. Nor did Hall-Houston assert actual control over Frank's Casing or Barker, as evidenced by Plaintiff's deposition testimony. Ex. A, p. 24, l.21-p. 25, l.8; p. 26, l. 8-p. 27, l. 10; p. 27, l. 16-l.25; p. 119, l.3-l. 13. Hall-Houston represents that under a Master Services Agreement, PPI Technology Services ("PPI") provided a company representative, Bob McLarty, to Hall-Houston, but McLarty only insured that the other independent contractors were performing their work on the rig. Ex. C. The mere presence of a representative on site to observe an independent contractor's work does not evidence actual control. *Koch Refining Co. v. Chapa*, 11 S.W. 3d 153, 157 (Tex. 1999). Mere control over safety matters does not constitute control within the scope of § 95.003 over the manner in which the work is performed to impose liability. *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W. 3d 688, 700-01 (Tex. App.--Houston [14th Dist. 2004, rev. denied)("[I]t would be harmful to worker safety and, thus, to public policy, to hold that control over 'safety matters' subjects an owner to

liability because such a holding would encourage owners to divorce themselves from all safety concerns.  Unless, the owner imposes a safety regulation or procedure that actually causes or contributes to the contractor's injury, we do not deem such regulations as 'control over the manner in which the work is performed.'").  A premises owner who requires independent contractors to follow its safety rules and regulations does not owe the independent contractor's employee a duty to ensure that the employee does nothing unsafe.  *Id.* at 702.  Nor is actual control shown when a premises owner's safe work permit system gives it the right to preclude work from starting or stopping it after it has begun.  *Id.* "[A] premise owner, merely by placing a safety employee on the work site, does not incur a duty to an independent contractor's employees to intervene and ensure that they safely perform their work." *Chapa*, 11 S.W. 3d at 157.  "A possibility of control is not evidence of a 'right to control' actually retained or exercised." *Coastal Marine*, 988 S.W. 2d at 226.

Because the summary judgment evidence demonstrates that Hall-Houston exercised no control over Plaintiff or Plaintiff's work and because there is no evidence that Hall-Houston had actual knowledge of any dangerous condition on the rig, Hall-Houston maintains that it is entitled to summary judgment on Barkers' Chapter 95 claim.

Both Hall-Houston and Hercules contend that Plaintiff cannot recover for negligent infliction of emotional distress because

-13-

Texas does not recognize such a cause of action. *Twyman v. Twyman*, 855 S.W. 2d 619, 621 (Tex. 1993); *Boyles v. Kerr*, 855 S.W. 2d 593, 594 (Tex. 1993).

Plaintiff's only other possible cause of action under Texas law, a bystander recovery theory, also does not fit the facts here. insist all Defendants. In Texas, a claim that a bystander who witnesses another person's injury or fatal accident and as a result suffers emotional anguish must satisfy three elements to be cognizable: "The plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) The plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) The plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *United Services Auto. Ass'n v. Keith*, 970 S.W. 2d 540, 542 (Tex. 1998), *quoting Freeman v. City of Pasadena*, 744 S.W. 2d 923, 923-24 (Tex. 1998); *Rodriguez v. Riddell Sports*, 242 F.3d 567, 578 (5th Cir. 2001). Although the elements are flexible and should be applied on a case-by-case basis, when the material facts are undisputed, bystander recovery becomes a question of law. *Id.* at 542; *id.* at 578.

Hall-Houston and Hercules contend that Barker was not "closely

-14-

related" to Broussard. *Jones v. City of Houston*, 294 S.W. 3d 917, 920 (Tex. App.--Houston [1ˢᵗ Dist.] 2009, writ denied), *citing inter alia Restatement (Third) Torts* § 47, comment e: "*Close family member*. To recover under this Section, a person suffering emotional harm must be a close family member of the person who suffers bodily harm." *See also Rodriguez v. Motor Expr., Inc.*, 909 S.W. 2d 521, 525 (Texas App.--Corpus Christi, 1995)("We have interpreted 'closely related' to mean a familial relationship. 'Closely related' means 'relatives residing in the same household, or parents, siblings, children, and grandparents of the victim.'" [citations omitted]), *rev'd on other grounds*, 925 S.W. 2d 638 (Tex. 1996). To recover under this Section, a person suffering emotional harm must be a close family member of the person who suffers bodily injury."). *See also Hinojosa v. South Texas Drilling & Exploration, Inc.*, 727 S.W. 2d 320, 324, 322-24 (Tex. App.--San Antonio 1993)(holding that the relationship of a co-worker and close friend was not sufficient to entitle a plaintiff to recover in his capacity as a bystander for physical injuries resulting from the negligent infliction of emotional distress). It is undisputed that Plaintiff is not related to Broussard in any way. Ex. A, p. 67, ll. 10-16.

Hall-Houston and Hercules further maintain that even if maritime law were applicable here, Defendants would be entitled to summary judgment. *Plaisance v.* Texaco, 966 F.2d 166, 168 (5ᵗʰ

Cir.)(*en banc*)(*reaffirming Gaston v. Flowers Transp.*, 866 F.2d 816 (5th Cir. 1989))(holding that plaintiffs must suffer physical injury or physical impact to be compensated for purely emotional injuries; did not address zone of danger theory), *cert. denied*, 506 U.S. 1001 (1992).  While the Supreme Court adopted the "zone of danger" test for emotional injury claims under the Jones Act that are not accompanied by physical injury in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 557, 547-48 (1994)("the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of defendant's negligent contact, or who are placed in immediate risk of harm by that conduct"), it has not been determined whether the physical impact requirement remains in non-Jones Act maritime cases.  Even if it did, it is undisputed in this case that Plaintiff suffered no physical harm in the incident and that he does not meet the requirements of the physical injury impact rule.  Nor  was he in immediate risk of physical harm if the zone of danger test is applied to non-Jones Act maritime claims.  At the time he witnessed Broussard's fall, Barker was about two feet away from the opening in the rig's drill floor and the pollution pan was approximately six feet below the opening in the drill floor.  Plaintiff's Dep., Ex. A, p. 56, ll. 17-25.  Plaintiff testified that he had his back turned to the opening at that time and only became aware of the incident when he heard a noise behind him.  *Id.* at p. 53, l. 24-p.

-16-

54, l. 4.  Plaintiff turned around and saw Broussard hanging onto
the rig and observed that the pollution pan had fallen.  *Id.* at p.
60, ll. 19-23.  Plaintiff stated that his first reaction was to
help his fellow workers, and not that he was scared that he would
fall the 105 feet since he was standing on solid ground.  *Id.*, p.
61, l. 18-p. 62, l. 5.  He agreed that he was on the top of the rig
floor, out of the dangerous position where something could have
happened to him.  *Id.* at p. 68, l.18-p. 69, l.1.  To have been
within the "zone of danger," Barker would have had to experience
fear of death or injury due to his proximity to an actual accident
or near accident.  *Gottshall*, 512 U.S. at 548 (a Federal Employees
Liability Act ("FELA")[6] case, FELA worker can recover for
negligently inflicted emotional distress only if the distress arose
from an accident in which the worker was within the zone of danger
of physical impact).  Furthermore, even if the more liberal "zone
of danger" test applicable to the Jones Act claims were applicable
here, and if Plaintiff had been in the "zone of danger," there is
no proximate cause between any danger he faced and his alleged
present mental and physical problems.  *See Lukowski v. CSX Transp.*,
416 F.3d 478 , 482-84 (6th Cir. 2005)(in FELA case, the zone of
danger test applies only to emotional distress that results from

---

[6] Decisions in FELA cases are applicable to cases brought
under the Jones Act because the Jones Act incorporates FELA as a
basis for recovery.  *Matter of Complaint of L.L.P&D. Marine, Inc.*,
Civ. A. No. 97-1668, 1997 WL 590804, *2 (E.D. La. Sept. 19, 1997),
*citing Miles v. Apex Marine Corp.*, 512 U.S. 532, 556 (1994).

fear of plaintiff's own personal physical safety and not to the emotional distress the plaintiff suffered from witnessing a third party's peril and death), *cert. denied*, 546 U.S. 1150 (2006). Barker testified that the cause of his emotional distress was the result of seeing Broussard die, not the result of any risk of himself falling.  Ex. A., p. 133, l. 11-p. 134, l.2; p. 134, l. 24-p. 135, l. 15.

### Plaintiff's Response (#18)

Plaintiff submits the affidavit of Safety Specialist Benjamin Pooler, II ("Pooler") with attachments including his expert report of April 26, 2011 (Ex. A) and the report of clinical psychologist, Dr. Lyle LeCorgne (Ex. B).  Citing *Gottshall*, Plaintiff contends that Pooler's report and Plaintiff's deposition testimony "establish that Plaintiff, at the time of the accident, was in the zone of danger which in this case was the open hole without protection to employees working there."

### Hercules' Reply (#19)

Hercules responds that "Plaintiff has essentially conceded that if Texas law applies to this case, Defendants are entitled to summary judgment."  Even if maritime law applies, Defendants have shown that they should be granted summary judgment.

### Hall-Houston's Objection to Plaintiff's Summary Judgment Evidence and Reply (#20)

Hall-Houston objects that Pooler's single statement of his

opinion, i.e., that at the time of the accident "Frances Barker was standing in the zone of danger (adjacent to the open hole)" ((#18-4 at 4), is conclusory and not based on specific facts and is not supported by Plaintiff's own deposition testimony about his perception that he was not in fear for his safety, as argued by Defendants in their motions for summary judgment. *See Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993)("[C]onclusory allegations supported by a conclusory affidavit will not suffice to require a trial.").; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)("the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial"; summary judgment cannot be avoided by "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"). The Court agrees.

Hall-Houston Reply mirrors that of Hercules.

Because Defendants have provided admissible supporting evidence and because the Court fully agrees with Defendants' arguments as a matter of law, the Court

ORDERS that Defendants' motions for summary judgment (#16 and

17) are GRANTED.

      **SIGNED** at Houston, Texas, this _8th_ day of _February_, 2012.

                _____
                    MELINDA HARMON
            UNITED STATES DISTRICT JUDGE